Case No. 24-1384, et al., Preferred Building Services, Inc., Petitioner v. National Labor Relations Board. Mr. Paetko for the Petitioner, Mr. Heller for the Respondent, Ms. Johnson for the Respondent. Good afternoon. Thank you for your patience. Thank you. Good afternoon, Your Honors. May it please the Court, Tyler Paetko for the Petitioner, Preferred Building Services, and I'd like to reserve three minutes for rebuttal, if I could. Thank you. So this appeal concerns the denial of constitutional due process rights. As the Board and all parties agree, including the intervener, SEIU, if the picketers, they're sometimes called alleged discriminatees, if they were engaged in either recognitional picketing or secondary picketing, they lose the protection of the Act. Everybody agrees. Is that a constitutional issue? Well, the exclusion of evidence is what I'm getting to, is the constitutional issue. So in this case, that principle was violated very early, 11 years ago, at the trial. I was there. The judge – you give trial estimates. It's just like a federal trial. Federal rules of evidence apply. About the sixth day, we made a motion, hey, the General Counsel's taken way more than their allotted time. Their time estimate was four days. And the next morning, we showed up, and the judge issued sua sponte, an order striking all of my clients' affirmative defenses, not only that, preventing my client from presenting any evidence in support of those affirmative defenses. The first board got a limited record, and they found even on that limited record, there was sufficient evidence of secondary picketing, that is, pressuring a neutral and meshing a neutral in the primary employer's dispute. That's unlawful. That's unprotected conduct. That was on an incomplete record. Unfortunately, that error, which is admitted, infected the proceedings all the way through, including in the Ninth Circuit, because in the Ninth Circuit, the Ninth Circuit looked at the board's decision and said there was insufficient evidence of secondary motive, secondary motive by the union in the picketing, but they had an incomplete record at that point. In fact, the evidence that was excluded by the ALJ would have shown the secondary picketing motive, because just like in the general maintenance case, 1999 decision by the board, there were trashing incidents at the Millennium Tower. That's a skyscraper in San Francisco. It's actually sinking. But it has very prominent tenants. One of the best quarterbacks ever, Joe Montana. They come in on Christmas Eve and throw coal into the lobby. They fight with a security guard. The San Francisco Police Department is called. They show up and they fill out a report. There was injuries at the picket line. That's exactly the kind of evidence, Your Honors, that was at issue in general maintenance. Just to sort of move the camera forward a little bit, were we doing the board decision in round 2 here? Yes, understood. And that board decision said, we will take as given your evidence, even accepting your evidence. We will take it.  It doesn't show secondary picketing because it occurred after the unfair labor practices at issue. So, so your evidence got in, you provided that evidence. It was considered by the board. We can see it too. And they said, right. Right. Understood. Good. Excellent question, Your Honor. So, the Ozark case, this court taught us that an offer of proof is not a substitute for live testimony. It's not cross examination. I'm a trial lawyer, not really an appellate lawyer, and I love a good fight. I just don't like to fight with two hands tied behind my back, which is what happened. Your job is to, your trial, you know, your job is to make a proffer. Here's what we would have shown. Here's what we would have done. Right. And when you come, we have sort of an equivalent rule here at the appellate level that you have to show prejudice and your prejudice and your brief here is we wanted to put in the evidence about Millennium Tower and the trash throwing. And you don't say more that had we been allowed to cross examine someone, they, we think they would have said, or you just said, we want to be able to put in that evidence and the board. Considered it. So you're not prejudiced prejudice when they consider it and they say. It doesn't matter was long after the unfair labor practices and no amount of cross examination is going to change the calendar. I understand what the second board said. That's that's the reason for the appeal. So, in that case, the court found an order barring a party from introducing relevant, non cumulative evidence is typically always prejudicial and reversible. And the same applies here. The court said relevant is the point. It's not relevant. If it post states, all of the unfair labor practices. Well, okay. Maybe that's where I'm not understanding things. Right? Right. How is it relevant? If it post states. So, so, yeah, so the, the, the recognitional picketing 87, if you pick it for more than 7, more than 30 days without filing a petition, it's unlawful. It's unprotected. The millennium was 57 days after the picketing started. So it's relevant to that 87. I didn't understand. I thought your argument about your to call your due process argument was asked to the secondary picketing as to both your honor. I mean, it's relevant to both the secondary. It's relevant because again, the picketing tell the board that we want this millennium tower thing to be considered as part of. We wanted a, and what we thought we would get as a remand to present evidence, live testimony, all the tenants that had calls thrown in their lobby and a security card assaulted on Christmas Eve. That's what general maintenance said is relevant. We were, we were prevented actively prevented my clients. President Bob's query. It's a family business. You know, this, this business, he started, he said, started to testify after November 19, the union shut down 12 more sites. They picket those sites as well. The judge cut him off. You can't go there. I'm not even going to let you go there. We were not allowed to present our evidence. That's why it's a due process issue. In your brief to this court, where do you argue your due process point about putting in evidence as the millennium incident as part of your argument about recognition? Well, the recognition picketing, it's, it's relevant on his face. I'm sorry. I asked you a question about where in your brief. I can find this. So, you said, you said you've argued it as to both and I just, I think I must have misunderstood something. Well, it's relevant on his face. It's more than 30 days. It needs to be raised in your brief. It is, it is argued in our brief that it's relevant to both recognition. So, again, this court in Ozark, not too long ago, 2015, there are sometimes errors at trial that deprive a litigant of the opportunity to present its version of the case. They are also ordinarily reversible since there is no way of evaluating whether or not the evidence affected the judgment. When, for example, an appellant has been deprived of the opportunity to summon witnesses, the appellate court. You're not objecting to an inability to conduct discovery. You knew what the evidence was you wanted to put in, right? That's correct. That was described in the proffer of evidence. We tried to describe it in the proffer. Some of it, you know, until we talked to the witnesses and cross examined the picketers, it's not even known what that's going to be. For example, the timing of the picketing on Christmas Eve at Millennium, whether that was after hours, whether, you know, whether it. But it's, but it's a little bit like summary judgment. Summary judgment is not a due process violation or, you know, even though you have to reduce evidence that, you know, in live form might be more differently expressive. You have to proffer is like, you have to say what it is that you wanted to put in and to the extent that it wasn't fully descriptive. I don't think that's a reason to. To reverse well, we did describe the evidence and the court said, yeah, okay, we hear it. We see that evidence. We accept it, right? But if it were brought in, it wouldn't make a difference to us. Yes. So the refusal of the evidence, I guess, isn't really a due process problem. It's it relates to some other. Legal error that you'd have to identify. Well, again, I think it is legal error to deny the party opportunity to call witnesses and armed with the evidence that we should have had at trial to use cross examination skills. Ozark says that as experienced trial lawyers know, but a hostile witness realizes that examining counsel has information bearing on the answers to counsel's question. The witness tends to be more candid here. There was the company was deprived of this incentive for truthful and complete testimony. In other words, what's your best case? That your hope and I will take as given that you're an effective cross exam examiner and cross examiner. Your hope that through the crucible of cross examination, something would be disclosed. That would undermine either the secondary or that's just a hope that the process itself, you can't you're not making a process to that, right? That itself is required by due process. So I'm going to make a legal error in any way. I don't understand that error. Require people to show how things are going to work out, not speculate as to understood. So I would make an analogy to an employment discrimination case. No employer is going to say, hey, we discriminated, right? We, we discriminated based on on age. We terminated all the people with higher salaries, which correlates to age. So we have this burden shifting pretext, circumstantial evidence. The totality of evidence is considered. It's the same here. We're evaluating the unions. The picketers motives, their motives, their subjective motives. Why were you picketing? Well, they said, why we want a union that's recognition as as member Kaplan found that was recognition in nature. But I wanted to point out that this issue of primary versus secondary is very nuanced. It's very as as the as the board is set is among the labor laws most intricate. It's based on the overall impression of what the parties were doing. And when you limit the evidence, it doesn't allow the fact finder to know what the totality of circumstances were. I guess on this circumstances, but but general maintenance relied upon was actually the absence of the employer from the site, right? That's 1 of the factors. The absence of the employer from the site, and you've made no proffer. That preferred building services was present. On December 24th, working in the building, and you don't need cross examination for that. You represent preferred building. And so, without having made that proffer that you actually met the prongs, the recognitional picketing issue. So, that information is entirely within your control. Well, generally, not a problem. So general maintenance considers a number of factors to go into the value and just like employment discrimination, circumstantial evidence to the employer of shifting reasons. Was there other evidence to suggest a bad motive question? This 1, this 1 general maintenance case, even vote. Yeah, went off on the fact. That there was no evidence that the employer was present at the site. 1 of the required prongs. For something to count as recognitional picketing. And your proffer nowhere mentions that preferred building was, in fact. Present at the site on December 24th. So, this picketing happened, so you can't win without that showing and you haven't made it. That's not what general maintenance says. It's 1 factor among many. Is it an optional 1? No, it's because factors are all about. It's the site. They're at the site. This is the time when they'd be at the site. Yeah, that's pretty important. That's all more dry dock and general maintenance. What the court focused on was the trashing. No, no, I think the court it's, it's, it's, it's legal. I think this is what the board said here was that the employer wasn't there. You can't, you can't be right. Employer has to be there. Well, that's that's a factor for the dry more. But there's many other factors that go into it, though, and concede preferred was there. That was their building. They're cleaning. That was 1 of their contracts just like at the time of the picket on December 24th. And let's assume they were, I'm conceding that they were, you can't they were not there. They were there. They can see that you didn't proffer that. No, I'm saying, for purposes of argument, we were there not there. Let's assume they're not there. Well, then again, is that that is evidence of secondary pressure. If the employer was not there, the primary employer was not there. So it's 1 of the factors. I mean, general maintenance. I keep getting confused whether you're talking about the recognitional or secondary boy, picketing issue. I thought you were on recognition. I'm sorry. We're kind of skipping back and forth. But either either 1 is a prohibited picketing objective. So, there's, there's a series of them. And that was all excluded. So, October 29th, they started. I'm asking just. From your proffer, the evidence you wanted to get in the evidence, you asked the board to do a remand. Yeah, it was on December 24th. It was Christmas Eve. I don't know the exact time it was morning, midday afternoon evening. I think I think it was evening. I know evening. Okay. Yeah, I know that there was a police were called. There's a police were called. There's a security guard. Yeah, there was a proper that there was. Anybody in the building Christmas Eve evening other than the security. Well, I mean, you're, I don't think our burden on appeals identify every scrap of evidence that we would have mustered and presented if we had been given the opportunity when the judge said, you can't go there. I'm going to get it. I'm going to cut your witnesses. I'm going with where the board went. Okay. You went to the board board decides everything reviews to know if it can decide anything that I can decide facts to know. So, when you go to the board, you know, this. You want to go up and tell them here's what we weren't allowed to put in. We got to make a proffer. And if you're proper didn't include the things that made your proffer with the exclusion of that evidence legally relevant. And that's so we did, then they're fine to say you haven't shown any prejudicial error. We didn't have witness declarations. For example, we were given a limited time to prepare a brief proffer, which we did. And we mentioned the police report, but the police reported what you didn't mention was. Is anybody in the building? Well, the police were called to because there was violence on the picket line security guys. Yes. That doesn't mean that there's. Other businesses in the building were there and we're harassed. It's a 40. it's a 40 star Christmas evening. Right? Right. So that there's no question. The police were 40 floors and you're not even going to know what's going on on the ground floor, but. Yeah, I just, I'm just, I'm just getting to the point that you had an obligation to show things here and you pick millennium towers. You pick the police report. But it doesn't seem to me that you were meeting sort of the legal prongs and if you want to talk about secondary picketing or recognitional picketing that you would have needed for the exclusion of that evidence to be prejudicial. But I guess I take it your argument as well. We would get more information if allowed. To go put it on before the is that your answer in part? I mean, we would be allowed to cross examine the picketers, for example, which we were prevented from the evidence shows a millennium. They threw coal into a residential building lobby at members of the building security team, causing physical injuries, resulting in a police report. The DLJ said that was not relevant. It's not I'm going to exclude it. It was only by luck that we got that into the record because the judge excluded everything. We did include that. It was you doing your job for the board, right? Well, we did include that in our offer of proof. There was also testimony by the union that they visited about 20 sites where preferred had cleaning contracts. That's a 1, J, 80 and 1, J, 102. Mr. Square, the president testified that targeted at least a dozen other sites after November 19 and that preferred lost contracts as a result of the picketing. It was it was coercive in nature. We didn't to your point. Your honor. We didn't go through and do pages and pages of what we would eventually introduce have given the opportunity. The 1st boards made it so that we didn't have to go there. They decided just on the limited record. There was sufficient evidence. And honestly, we thought we would at least have a hearing to be able to present the evidence that we were excluded to cross examine their witnesses armed with this evidence that we could use clearly relevant as the board found. And it was just the air infected the entire proceeding for questions. Any question we'll give you some time for. Okay. Thank you. Good afternoon may please the court Joel Heller for the national labor relations board. Preferred does not dispute that it discharged threatened interrogated and surveilled employees who are picketing to improve their working conditions. And substantial evidence supports towards finding that preferred failed to make out. It's affirmative defense that those employees were engaged in either secondary or recognition of picketing. So, preferred primary argument on appeal is an evidentiary 1, but there's 2 problems for preferred. In its argument that it was should have had the opportunity to introduce additional evidence. The court has been over already. 1 is that the board already considered the evidence considered whether that evidence would have demonstrated a secondary impact. And determine that it would not so there's no prejudice. The 2nd problem is that, as we were discussing before that evidence is not relevant because it only went to the December 24th demonstration and Millennium Towers. As you were saying judgment that December 24th post dated all of the unfair labor practices in this case. So, even if preferred had been able to show a secondary object on December 24th, that would not serve as an affirmative defense to actions. It had already taken by that point. And even if the even if the December 24th. Demonstration were relevant to the wrecking or sorry, even if preferred argument is that the December 24th, it would, it would introduce evidence that the December 24th demonstration. These are the, it's recognitional object defense. It's the same problem. Because the board already found that there is no evidence of a recognitional purpose and that's a substantial evidence question at any of the demonstrations these in its offer of proof. Preferred said that the. 1224 demonstration had the same flyers with a similar message as the October and the November demonstrations. That's a 1969 through 70. And the 9th circuit already determined that those sorry, that's a that's the 2nd day versus primary. The 9th circuit already determined that those flyers were primary in nature and the board looking at that, looking at the evidence in the, in the record also determined that there was no recognitional purpose. And so there was no recognitional purpose. Evidenced in these flyers in this, in the, in the messages that were at October and November. Therefore, since it was the same in December, there was no recognition purpose in December as well. We want a union. Not evidence of recognition. Or maybe this was organizational picketing. Sure, so 2 things 1 is that. The chant, well, that wasn't the completion that wasn't the complete change. It said we want a union, not corruption. We want the union. Maybe it was a, I don't remember if it was a right. Not corruption. Okay. So it's well, yeah, so you look at the context, you look at the totality of the circumstances. What else was going on at these demonstrations? So, yes, in that 1 chance, there was reference to a union. There were other chance that didn't reference. Some of the signs had on them. Some of them didn't. Okay. You had the flyers that the handbills that were passed out. Those did not mention units. So, right. There was some indication. There were some references to unions, but not not everything was referencing unions. And even the references to unions, just because there is a reference to, or just because a union is on the scene does not necessarily make it recognition in nature. And you again, looking at the totality of the circumstances at the context, the focus of these demonstrations were on the working conditions. I prefer contracted buildings, the sexual harassment, the hours, the wages, those kind of things. And the union was helping them out. Local 87 was helping these employees. Address those issues, and that doesn't, however, make it a recognitional, an unlawful recognitional purpose, because you look at sometimes we say these words, recognitional purpose, organizational purpose as shorthand, but look to the text of 87. And what it says, what is improper, recognitional organizational purpose is when the picketing is for is has the object of forcing or requiring an employer to recognize the union or forcing or requiring the employees to accept the union. So, a reference to a union, or even saying some of the employees saying they want a union doesn't get to that level of forcing or requiring recognition of that union by an employer or forcing or requiring other employees to join up with that union. And but so those were kind of hitting hitting the point where it is, but to make a bigger to make a bigger point about the we want a union line chart preferred has another way to interpret that evidence. They think it shows a recognitional purpose, but ultimately, just because preferred has its own interpretation of the facts. Isn't enough to displace a board decision on substantial evidence review. Just the question, I guess, for what the object of picketing is was. Is it an objective or subjective test? Right. I think you're looking at objective factors because especially with a on the recognitional point. It's you're looking at it from the perspective, I would say of the of what an employer or other employees would think, because that's that that kind of forcing and requiring what what. Right, the impact on those other parties, and so you're looking at what was said out loud, what was broadcast to those to the employers to other employees. And that is more objective in nature. I would say. And so the other point on that is right. So these. So, then is it just a legal question or is it a factual question? What the object is, it has been treated as a factual question, even if it's an objective test, right? A reasonable employee slash employee would think I think so. I think this court has certainly applied it on the to supply the substantial evidence standard of review. I don't remember if offhand, it specifically said it's a question of fact, but it has said substantial evidence review applies here. It has to be a fact question. If it's a substantial evidence question, right? Yes, it's a question of fact. What would a reasonable person in the context think? And you're looking, you're asking the jurors to make I mean, reasonableness sometimes can be legal, sometimes factual. And you're saying here, it's factual, right? That is how this court has a reasonable. Employer here feel like they were being pressured into having a union would reasonable body of employees feel like they were being pressured to ask for union. I think that's right. I don't think it's about kind of what in its heart of heart local 87 wants to happen. Because again, looking at the language in 87, what's talking about forcing or requiring, it's not talking about does the union hope that these unions will, sorry, that these employees will join up with the union at some point. One other point I would say on the evidentiary point, which was the bulk of preferred argument here. So, we've been over why the evidence in their proffer is insufficient. They say, well, we would have, they speculate that there would have been some additional evidence that might have come in on cross examination. But the court standard when reviewing these evidentiary issues is whether it clearly appears that the new evidence would compel or persuade to a contrary result. And the only way the court can answer that question is if it knows or at least has some indication of what that additional evidence would be. And preferred doesn't offer any of that. That's why in Salem Hospital. They're hampered here. I mean, the upfront decision of the ALJ a couple of rounds ago to just flat out exclude their affirmative defenses. Is that defensible? So, I know that the ALJ did make that point about excluding evidence. But of course, the ALJ also did address their defense on the merits. So, it's not that the ALJ entirely excluded everything that has to do with these affirmative defenses. Well, it's kind of insane. I'm not going to let you put your evidence in, but now I'm going to address your claims. Right. I'll admit that that was a little odd. Is it right? Is it wrong? Are you defending that? I'm not defending here the ALJ's initial decision for the reason I think you said, because what's on review now is the board's decision. And the board decision saying in response to their request to reopen the record was to say, well, we've looked at it. So, you could essentially say, even if the ALJ. Through to the poisonous tree here. It's like, all right, we told you sort of a grand briefing level what we wanted to get in. But because of this upfront error, it just left the record bare. And we can't obviously create on round two before the board every jot and tittle of what are allowing us to put on the evidence of our affirmative defenses that have exposed. Sure. It's not every jot and tittle, but they have to do something. And what all of they've specifically identified is this December 24th incident at Millennium Towers. And we've already talked about that. They haven't said whatever else they want to put in. And in the Salem Hospital Corp, the NLRB case that they cite in their reply brief, this court said that when an employer or a party fails to provide specific evidence of potential witnesses testimony, we cannot determine that the excluded evidence was either relevant or material, much less how that testimony could persuade to a contrary result. So the court hasn't given the court anything by which to make the determination that there has been an abuse of discretion, that there would have been a different result had they been able to put in additional evidence post remand. On the secondary picketing, if it was a matter of law that since it post dated all of the unfair labor practices, December 24th, the evidence by December 24th, if that were the basis for pulling the board's decision, could they then raise this issue again at compliance proceedings? Well, at that — Secondary picketing, I would say, is sort of an unclean hands. And the same question for recognitional picketing. Right. So it wouldn't go to the liability question at all. The question of whether they could bring it up on compliance is whether, like, the — Pretty equitable proceeding if they just sort of set it on clean hands. But so what, I guess, what would they be making that argument in purpose of? That there was, like, cutting off of back pay or something like that? I mean, that would be a question. You wouldn't want to hire them after they threw coal at security officials on Christmas Eve. You can't make us hire people who violate criminal laws. I mean, I don't want to make their arguments for them.  Probably got way more sophisticated ones than I'm thinking. I'm just asking. I just don't — I'm trying to understand how the liability and compliance proceeding things — Sure. — there's different ways of — Right. — addressing this matter they could show later. Yes. I think if the court will solely on the timing issue, if they say the December 24th, we're not going to even look about whether that was secondary or whatever. We're just going to say it was too late. That is the sole basis for the court's decision. Then I think there might be some questions open on compliance proceeding as to whether that subsequent, you know, post-discharge actions has some impact on the remedy. Certainly not saying at this point that they would be successful, but they could raise those arguments. So same with the recognitional picketing. Because the recognitional picketing, if I could just explain this, that also has a timing problem for them because the recognitional picketing is only unlawful if it extends more than 30 days. And most of the unfair labor practices in this case occurred before the end of that 30-day period. So the 30 days started on October 29th. Most of the unfair labor practices occurred within that initial 30-day period. So even if it was recognitional picketing — Oh, this seems — And I'll get to that. — an important word. And I will get to that. But that's my first point. So even if it was recognitional in that first 30 days, it's still lawful. So that was most. As to the rest of the unfair labor practices that occurred after the 30 days, they still occurred before there was any additional demonstrations. So after November 17th, I believe it was, the next demonstration was on December the 18th. So that was the first picketing that was outside of the 30-day period. But all of the unfair labor practices had occurred before December the 18th. So even if December 18th, December 24th was recognitional outside of the 30 days, all of the unfair labor practices already happened there. So they faced the same timing issue as they do with their secondary — How about the ones that were outside that initial 30-day period? Yeah. The protective period. Mm-hmm. There were some that were out, but I thought they were terminations that were because of the contracts. Yes. Canceled, which were canceled within the projected 30-day period. That's true. And so if you take it in that way, then everything occurred in the initial 30-day period. Well, is that right or wrong way to take it? I don't think it matters because the timing is bad for them either way. Right, just because I asked the question, is that the right way or the wrong way to take it? So I guess you could say that the — What does the law say about that? If you terminate a contract in this period, but then you don't effectuate the terminations of the individuals, the only — let's assume it's a clean, clear decision that was only because of the contract cancellation, when does that mean the unfair labor — the relevant unfair labor practice happened? That I don't know. It's not an issue that has been briefed. It was not raised by the other side, so I don't have an answer for you on that point. But again, I think it doesn't actually matter under the facts of this case because either if you say, well, that happened when the contract was canceled in mid-November or it happened when they were actually discharged in December 14th and 15th, it was still before any purportedly unlawful recognition of picketing. So because the unfair labor practices are on their merits undisputed and because the affirmative defense has failed, the court should enforce the court's order.  I don't think so. Any questions? No. Thank you very much, counsel. Okay. So we'll hear from the intervener now. May it please the court. Bryn Johnson for intervener, SEIU Local 87. The eight workers who were discharged have now been waiting more than 11 years for their remedy. Preferred's appeal doesn't contest the board's finding that those workers were fired for their participation in the protests and in order to chill further protests. The board was right not to reopen the record because the only evidence that Preferred seeks to put in is irrelevant to the remaining questions in the case. Because that evidence that Preferred proffered, in its proffer to the board, was only about the Christmas Eve protest. Why were the workers chanting, we want a union, if not for a recognitional purpose? Yes. The workers were chanting, we want a union, not corruption. And they were comparing what they, the help that they had received from the union with the exploitation and the corruption that they felt like they were facing from the employer as evidenced by the rest of the signs and the flyers in that case that were all expressing the workers' concerns with their working conditions. And on the publicity proviso issue, if the workers were informing the public they lacked a union, then is the protest automatically recognitional subject to the proviso or can we still conclude the protest fell outside of 8B7? No, you could still decide that the protest fell outside of 8B7 because we want a union while accurately informing the public that the workers did not have a union doesn't necessarily indicate that the purpose of the protest was to force or coerce the employer in order to recognize a union for the workers. There was none of the traditional evidence of recognitional object present in this case. The union never made a demand for recognition or tendered a contract. Workers weren't asked to join the union. All they did was walk around with signs that says we want the union and that's all they chanted is we want the union. That's the only thing happening. Would your position still be that it wasn't organizational or recognitional? If all the workers did was have the sign saying we want a union and chanted we want a union, then I think it could be a reasonable conclusion that they did have a recognitional object. However, that is... You don't have to have those other formal processes for it to be... You talked about there's no petitions filed, none of those things. So you don't have to have those things, just the content of the demonstration itself to make it recognitional. Yes, that could be a finding that NALJ could make that would be reasonable. However, that's absolutely not the evidence that is in the record here in that the workers did not have any signs asking for a union. Their flyers and signs didn't mention asking for a union at all. And they weren't just chanting we want a union. The union's name on a lot of them. The union name was on there because the union was present, but it's well established that the mere fact that a union is present at a picket does not make it an organizational picket. Otherwise, the union could never have pickets at employers. They don't represent workers. But getting back to the chants, the workers weren't just chanting we want a union. They were chanting we want a union, not corruption, and many other chants as well that were all focused on their labor dispute with preferred, including the preferred building's managers exploit workers. We want justice. When do we want it? Now. So the overall context, and this is a totality of the circumstances consideration, shows that the workers' purpose of their protest was to highlight their labor dispute with preferred. And the board recently found that. And because that's a reasonable interpretation of the evidence, that's all the court needs to decide this appeal, even if there are other reasonable interpretations, Judge Bullard. Why wouldn't the easiest way to sort of integrate all of the communications to say they were opposing these various unfair labor practices and they wanted a union because they had not been successfully able, on their own, by rebuffing the advances of the supervisor and the like, to stop the practices? It just seems like a natural way to read it is, yeah, we're opposed to this and this and this concrete thing. We want more money. We don't want to be harassed. To that end, we want a union. No, I don't think that would be the correct conclusion to draw in this case because the NLRA expressly found, and there was testimony in the record by the workers and the union president about what the communications between them were. There was no testimony that the workers asked to join the union or asked the union to represent them or that the union indicated that it was trying to represent the workers. The NLRB found in page 12 at the end of footnote 19 that there was no evidence that the employees were seeking recognition or to be organized, or even that the union was attempting to organize them at that time. I believe I've used my three minutes unless there are any other questions. Any questions? All right, thank you very much, Council. I will give you Mr. Sorry, is it Piedtko? Piedtko. Tough last name. Thank you. Mine always gets mispronounced. Okay, I apologize. No problem. I'll give you two minutes. Thank you. So just to start, because this is an easy answer, the statute answers your question whether you can go back and the prior picketing is insulated. If it's recognitional, the failure to file a petition after 30 days renders the entire period unlawful, unprotected. So it goes back to the day that they started. The statute is pretty confusing in its language. What language do you think? 29. 29. Say that so explicitly. Yeah, it's in our brief at page 8 in our reply. No, I'd like to look at the statute. 29 USC section 181. I'm sorry. 158. 158B7. Yeah. All right. So where's the language there that says it officiates the whole thing? The entire period of picketing. Where does it say that? What language exactly? Can you read the statutory language? 158. Sorry, this is recognition. Sorry. B7? Yeah, so B7. What language are you relying on that says it officiates the entire period? That's my reading of it. You don't get a pass. Such picketing has been conducted without a petition under section 159C of this title being filed within a reasonable period not to exceed 30 days from the commencement of such picketing. But then the difficulty there is you said it textually. The statute initiated it. I find the language somewhat ambiguous in that regard. If I could, I could submit another brief on it. It's been established law that if the picketing is recognitional, it goes back to the original date. What established? Where is that established? Well, it's in the statute. I'm asking in the statute. So the statutory text here does not say that it officiates anything that went before as I read it. Failure to file petition after 30 days renders the entire period of picketing unprotected. Is that in the statute? I'm sorry. I'm not seeing that. Well, that's my. What's your site? Sorry. Did you find it? Do you have a site? Yeah, I'm citing our brief, which is, is a paraphrase. But that's the problem with the paraphrase. I understand. I'm looking at the statute itself. Now, do you have a copy of the statute with you? It's in the red brief at Roman at one and two at the end. Addendum. Thank you, Your Honor. So, yeah, the start of this section, unfair labor practice by labor organization. That's in B. And then it lists these things. It's an unfair labor practice to do any of these things. Number seven. A cause to be picketed at an employer where the object is forcing or requiring the employer to recognize a bargain with a labor organization. So that. Unless. Labor organization is currently certified as representative. It was unlawful. I think you want to come down to see where such picketing has been conducted without a petition of this title being filed within a reasonable period of time, not to exceed 30 days from the commencement of such picketing. Right. It's, it, it doesn't, I guess, a better way to say it. It doesn't provide an exception that, um, if your original picketing was lawful and your later picketing is unlawful, the. You know, there's no violation with the statute says you can't engage in wreck picketing for a recognitional object or secondary object, putting pressure on a radio station, the tenants in the building that have nothing to do with the dispute and meshing them in the dispute. That's the secondary boy picketing for prohibition. But either way, if it's a secondary or recognitional, these are off issues. That's the point of developing a full record on an incomplete record without, um, adequate costs, cross-examination Ozark said it's not as the offer of proof is not a substitute for live testimony and cross-examination. And just, um, on the organizational, you know, we want a union, um, there couldn't be anything more recognitional than that. The president of the union, mr. Mr. Miranda, Olga Miranda said. That is the totality of the circumstances test. No, I do. I do agree, but that's a big one. We want a union. How could that be anything? As member Kaplan said, chair Kaplan said, that is the epitome of a recognitional cry. It's an organizing cry. We want a union. How could you say it would be more clear than that? How many have to say it? How many times? I don't think the law says, but the president. Well, I mean, I think you would agree. They were out there for a couple hours and you can watch the video and said they were chanting. I'm asking a legal question here. Cause you said you can't, that's the epitome. You can't get any more important than that. But if one person said it once in a two hour picket and no one else did that wouldn't matter so much. Right? Yeah, I would agree on it with that. They were chanting it throughout and it's on video. It's submitted. It's in evidence. It wasn't everybody though. Well, the, the alleged discriminaties, the picketers were chanting that. We want, we want a union. All of them are on video saying that all of them on the video that are chance making the chant is multiple people. I didn't, I didn't go through and say, Oh, did this for this person sit out? I mean, it was a group demonstration, noisy. They were all chanting the same thing. We want a union. We want a union. We want to, we want to be recognized.  Right. Not Donald. And that doesn't change it. I mean, we want her. The president of the union said they're organizing our workers that we're organizing our members. This is a fact question. I think, do you dispute that? This is a fact question. Right. We asked whether the object of the picketing is a fact question. I'm saying, I'm sorry. Just, do you agree that it's a fact question? What the object of the picketing was?  I do agree with that. I just think it's a fact question. So what you have to show, it's not that one could watch that video and come to that exact conclusion, but that it was clear error on the equivalent of that super deferential review of fact finding by this court. I understand your point, your honor, but I'm not here to retry the case to re-argue the machinations of the secondary. The point is due process. Give me a chance. Let me call my witnesses. Let me bring in my evidence. And, right, the totality of evidence is all relevant, including, you know, what member Kaplan then chair said, only the picketers would understand the gravamen of what they were truly communicating, not the  They would not be apparent to the public that the employees were not represented by the union. That's why the publicity proviso does not apply here. And just one other thing I wanted to mention that's in the record that I forgot to mention in terms of what evidence would be provided, there's also evidence in the first board decision. Footnotes 311 and 12.  That decision has been backhanded. Right. This is evidence that was excluded. The judge refused to admit evidence regarding other things, why the leaflets were drafted as they were, and whether the picketers blocked access to the building. In other words, evidence would have shown secondary activity, coercive activity towards the tenants. And that's what the Ninth Circuit said when it talked about general maintenance. It said the reaction of the tenants was relevant evidence because the union directly targeted the building's tenants and owners with coercive activity. And here, in contrast, they're talking about the preferred case. The union never engaged in coercive conduct targeting harvest or any of the building's tenants. That's what they did at Millennium. It worked in the first building. Let's go to the next one and let's ramp it up. Let's commit violence. I appreciate the time, Your Honor. All right. Any more questions? All right. Thank you, both counsel. The case is submitted.
judges: Millett; Pillard; Wilkins